Case number 17-2423, Debra Millen v. Oxford Bank. Argument not to exceed 15 minutes per side. Mr. Sanders, you may proceed for the appellant. May it please the court, I request to reserve five minutes for rebuttal. I'm confident that the court has had an opportunity to review the briefs. I would request, however, to give a very short summary of the facts that the court would allow. Ms. Millen, the plaintiff, began her employment with Oxford Bank in 1990. She was terminated in 2015. Between 2011 and 2013, she endured four transfers as a branch manager. In May of 2015, the bank instituted a strategic plan which was to eliminate the Goodrich branch where Millen was the manager, effective June 2015. In July 2015, a branch manager position became available. A younger, lesser qualified employee, Ms. Sherby, was placed in that position. July 2015, plaintiff Millen goes on family medical leave back. September 2015, the defendant confirms Ms. Millen is to return to work in October 2015. October 2015, Ms. Millen is terminated. March 2016, less than six months later, a younger, less qualified male is hired for a branch manager position. March 2016, a younger, less qualified female is hired for a branch manager position. Jason Howell, who's 36, hired... Does it matter to us, counsel, which branch these new hires go to? I don't believe it does, and the basis as to why I maintain that is Ms. Millen had worked at practically every branch of Oxford Bank as a manager. She was their utility person. She was the eldest person and most qualified person. She could perform any job within the bank. So it's my contention that to the extent there was a branch manager position available, they had never hesitated to put her in the position before. Why should they hesitate to put her in the position now? I'd like to discuss, particularly as it relates to the age discrimination claim, if I may. We maintain that there is a prima facie case of age discrimination. I believe the lower court and the defendants dispute prong four as to whether or not Ms. Millen was replaced by a younger employee or alternatively treated less favorably than similarly situated younger employees. It is clear in our contention that Ms. Millen was And I would refer you to the deposition transcript of Ms. Rosenstrater, ID page 124, page 21 of the ZEP. Question, what did Ms. Millen do while she was at Goodrich? Answer, she ran the day-to-day operations. Question, once Ms. Millen was Heidi Hawk, we would refer... That was closed down. How soon after that? Goodrich. Goodrich was shut down? Goodrich was not officially shut down, I don't believe, until February of 2016. However, Ms. Millen was terminated from the bank in 2015. So it's our contention that when she was terminated... But did they say you're terminated or we're getting ready to close this bank down, won't need you anymore? Or what was their communication to her at that time? Their communication to her was simply the offer of a severance package. We do know, however, that again she's terminated on October 2015, that the strategic plan of the employer effective May 2015 said that they would be eliminating the Goodrich branch effective June 26, 2015. That didn't happen immediately, the elimination, but Millen was terminated and it's our contention that she was replaced by Heidi Hawk. Was Heidi Hawk already working there? Heidi Hawk was already working there. However, Your Honor, I will rely upon two cases as it relates to our contention that this constituted a termination. I read to you what the deposition transcript said of Rosenstrat that she ran the day-to-day operations, now Hawk runs the day-to-day operations. I refer you to the case of Barnes v. General Corp Inc. 896 F. 2nd 1457, a Sixth Circuit case, which states a person is considered replaced if any employee is hired or reassigned to perform the plaintiff's duties. I would like to stop you for a moment. All of this is in your complaint. Because in your complaint, I thought that the focus was on a Mr. Rine that was in the deposition of your client. There was one person I felt was getting advantages and that was Eric Rine and he did get the job at, the favorable job, I forget which branch it is, it's not Orion, which one is it, you know, where he got the job. Eric Rine, we maintain, was an individual who was younger but who also received more favorable treatment. It's in your complaint, you know, that's what we have to look at. I believe it is in the complaint, Your Honor, and I'm looking particularly at the complaint now. Well, I know it's in the deposition testimony and I know where that is, it's page ID 169, but I thought that that was the focus and where you thought the district court went wrong here. You haven't even mentioned him, you have a whole new person that I don't remember reading much about. Well, what we do state in the complaint is plaintiff experienced treatment that is different than that experienced by other similarly situated employees with respect to the terms, conditions, or benefits of her employment. Yeah, yep, I agree. So we're still focused on where the district court went wrong. We also, also in the complaint, line 28, I say plaintiff was disadvantaged in favor of younger persons because of her age. So I believe that that is in the complaint. In terms of where the district court went wrong, I have two things to note. One, the district court did not find that there was a prima facie case as it relates to prong four being replaced by a younger person. I believe that that is clearly supported by the case that I just cited. By the deposition testimony. There has to be testimony . . . And the deposition testimony. Do you think it's there about that employee? Because I didn't see that. I mean, the best deposition testimony for your side was this testimony by your client saying, focusing on Ryan, if that's how you pronounce it. Ryan, yes. Ryan. Okay. So that seemed to be the focus, but today you're talking about the replacement individual with another name, the female. Absolutely, Your Honor. Is that tied to your client's deposition testimony that the district court could have used, and you pointed the district court to, in saying this is wrong to grant summary judgment to the bank because I've given you a prima facie case. Absolutely. We argued that she was replaced, that Heidi Hawk was favored over her. We list in our . . . Is that in your motion for summary judgment? Yes, Your Honor. We list in our summary judgment motion all of the comparables that we are comparing the plaintiff to. We give a list of individuals. Heidi Hawk being one of those individuals. And Eric. And Eric Ryan. Yes, Your Honor. So the bank says, well, we had this plan to eliminate this branch, and that's what we did, and she was the branch manager, and that's the position we eliminated along with her salary. We didn't hire anyone new to replace her. We just . . . the person there and didn't . . . I'm sorry, what is the supervisor's name? Rosen Stratter. And I thought the testimony was that they both took over the duties. Well, I specifically asked her, and I read you that testimony, what was the plaintiff's responsibility? Running the day-to-day job. Once plaintiff was terminated, who did those responsibilities? She testified, Heidi Hawk. She then went on to exclaim that she would come into the branch once a week and more or less supervise Heidi Hawk, which she also did for my client. So it's our contention that pursuant to the General Court case as well as the Pearson v. Quad Graphics case, 749 F. 530, that this was a replacement by a younger individual. Additionally, we may . . . Is that case in your brief? Yes. Okay. Well, we have that. Okay. And if you don't . . . your time has expired, so have you reserved some time? Yes. Good. Thank you. Thank you. I'd like to start with clarifying the facts because I think there may be some confusion that's possible here. First of all, the appellant, plaintiff, has grouped the number of branches, and I think it's important to know how many branches there were and who was in each branch, not by name but by age and by sex. There are a total of eight branches in Oxford at the relevant time period here. And plaintiff offers up as the comparables an incomplete group. At the time that her position was eliminated . . . Does she need a complete group? I do. I think she does, Your Honor. Why do you think? Well, because . . . If she just lays out the treatment that she argues is discriminatory, if she lays out one good example, doesn't she set forth a prima facie case? I would respectfully disagree and add something to that. The crux of this case is whether or not plaintiff was treated differently because of her age. There's no direct testimony in this case, no evidence whatsoever that there were any adverse statements about her age and derogatory statements about her age, no direct testimony whatsoever. And the same thing applies to the sex discrimination claim and the sexual harassment claim and the age harassment claim. So it's a matter of what evidence is there in this case to show differential treatment with younger people. I thought the comparator here was this gentleman, Ryan, instead of this Heidi. Well, I think the plaintiff attempts to . . . and we'll get to Eric Ryan, but I think the plaintiff attempts to expand his argument to use pretty much as far as the age claim is concerned, every other branch manager who's younger than the plaintiff. So getting back to this original group, we have eight branch managers. There's a reason why the plaintiff may be able to do that and that's the bank continued to move her among three branches. Well, let me get to that, Your Honor. Since you brought it up, let's talk about the transfers. The plaintiff worked for the bank since 1990. Between the ages of 30 and 40, the plaintiff was transferred between three different branches. It's not uncommon. And when she received a promotion at the age of 48 to become an assistant branch manager, she was transferred to another branch. Then when she received a promotion at age 52 to become a branch manager, she was transferred yet to another branch. And then when she was transferred to the other branch, she was given a raise of $2,080. So each time she transferred... She protested that. She didn't like it. Well, she didn't like it because of the distance from the office, but as the cases... She got a raise. Right. As all the cases indicate, a personal preference for working at a particular place as opposed to another in a transfer claim is more or less irrelevant. It's whether or not their duties were changed, their title were changed. None of that occurred in any of the transfers. Well, but the problem is she trains this guy and then he takes over, right? And she gets moved to Goodrich. After writing a letter explaining the sick people at home need her nearby, she wrote a letter... I understand that. I understand that. You looked like you didn't know what letter. No, no. When you say he wrote a letter... I said she wrote a letter. She wrote a letter. Right. Okay. Yeah. And you say it doesn't matter, but Goodrich, everybody knows, is the branch that had the least amount of business, that had at one point been closed before, and I guess then reopened. And as it turns out, that's exactly what happened. She ends up getting kicked out because she's the Goodrich manager. She was transferred to Goodrich branch in 2013, which was several years before the strategic plan was written where the branch was going to be eliminated. So there's no nexus between the elimination of the Goodrich branch... Was the Goodrich branch at all times the slow branch and hadn't it been closed once before? It was... There was more than one branch that went down to part-time, did not open all the time. If Your Honor is familiar, and I think you are with that particular area in Michigan, it's not a big populated area. So the banks, the branches don't get a lot of traffic. So some branches were on a little bit of a slump. In 2013, she testified that it was the slowest branch during that time period. The big question that Judge White asks, and I'm curious about too, is having trained the younger gentleman, having trained him at Orion, she begs to stay there, and she's moved, and he stays. So what's the story there? Well, I don't think that... I guess my response to that would be, where's the discriminatory animus? Where is the... It's age. Pardon? Age is lurking all over that. Well, let me... And I think that's important to get to the wider group of branch managers, because plaintiff's counsel said a number of times that the plaintiff was the oldest branch manager, which is completely not true. The branch managers at the time, the relevant time period, there were three other branch managers who he left out of the total of eight branches, and three of them were... One was 59 and two were 57, the same age as the plaintiff. So to say... Were they let go? Pardon? Were they let go? I don't know the answer. They were not. And I apologize if I'm repeating what's in my brief, but it's all there. They were not... There was no evidence of any adverse treatment. There were two depositions in this case, our deposition of the plaintiff and the plaintiff took Ms. Rosenstrater's deposition. And there was no evidence on the record at all in this case whatsoever that any other employees of the plaintiff's age that were branch managers were treated adversely. So what was the explanation for putting him in that position and moving her to the slow branch? I don't know that there was an explanation that anybody delved into. That's the event that's triggered in the whole thing is the fact that this Ryan got put in as the branch manager of the branch that eventually stayed around and she was put on sick leave and then came back FMLA. And when she came back, she was fired. I think it's important, and I'll return to it, that she was transferred to the Goodrich branch in 2013, several years, or at least two years before the strategic plan was put into place. In fact, the author of this strategic plan, David Lamb, wasn't even working at the bank in 2013. So I just want to do the best I can to dispel the idea that she was transferred to the Goodrich branch because they knew that branch was going to be closed down, because that's not the facts in this case. So there was a plan before Ryan was put in charge of that bank, right? No, there was not. Wasn't a plan before that? So I think that that's important. The timing of this case is very important, and the number of branch managers, the ages of all of them, because I think that to say that Eric Ryan received preferential treatment... But is there any explanation for why he stayed there, at why she trained him, and then he stayed there, and she was moved to a different branch? I don't know. I don't know the answer to that question, because it was never gone into. So we're left to, I guess, speculate, which I think it would be speculation. So moving forward... It had anything to do with age or sex. Moving forward, there's a vacancy in May of 2015, right? Yes. And then she... Then the supervisor is promoted, and now there is a vacancy at the Addison branch? Yes. Okay. So if you know that you're about to close the Goodrich branch, and she's going to be out of a job, why does somebody else get promoted into that job? I just don't understand. In defense to the FLMA, you say, well, this was planned back in May, so it couldn't possibly be leave discrimination. And then when it comes time to fill the Addison position, you say, oh, but she wasn't laid off until July or August. And it just doesn't... I don't get it. All right. Let me help by setting out some specific dates. The Addison position was filled on July 6th, 2015, by Jennifer Sherby, who was the head of the board at the time. The position was vacated July 6th because Nancy Rosentrader was promoted to Vice President of Retail Sales. So that position was filled on July 6th. Obviously, it came open a short period of time before that. At that time, the plaintiff was the branch manager of the Goodrich branch. And the plaintiff did not go on FMLA leave until July the 23rd. Oh, no. And so that makes sense for your FMLA. But for the age discrimination claim, if you know in May that you're going to close the branch, that this long time, very competent, apparently, employee is running, you know that come within a month, she's going to be eliminated, her job's going to be to help a younger person get promoted into this branch manager position, rather than the person who you plan to eliminate the following month. I understand what Your Honor's focusing on. And certainly, it's an argument raised by the plaintiff, but here's my... It's what? I didn't hear you. And that's an argument raised by the plaintiff, but here's my response to that. Number one, plaintiff was already occupying a position at the time as branch manager of Goodrich. And the defendant, though we can sit back in hindsight and say, well, maybe we should have done this and maybe we should have done that, the law does not require the defendant to transfer employees back and forth in a reduction in force. What prohibits an employee or an employer from... Or where they get in trouble with transfers is if they treat younger employees more preferable than older employees when it comes to a reduction in force. In this case, it was a promotion to the branch manager position. We can say, well, shouldn't the defendant have, in hindsight, thought about the plaintiff getting laid off? Maybe they should have slid her into that position. That's second guessing the business judgment of the defendant. Where, I guess, is the discriminatory animus to that? Where is... That there's any evidence... It might have been a good thing to do, but why was it age discrimination to not do that? The only way that the plaintiff can win that argument is to show that there were other employees, younger employees, who lost their position, who were... As branch manager and were transferred to other positions... Why does it have to be branch manager? Why isn't it a matter of exactly what happened when... Well, first of all, when do you say you closed the Goodrich branch? It was closed in February. February of 16? 17. 17. So it was over a year and a half after you got rid of her. Yes, it was over a year and a half after her position was eliminated. Even though the plan that you're relying on contemplated doing it in June of 15. It was... It's an exhibit, but the plan says the target date. That doesn't... It wasn't, this is a date etched in stone that it will be closed. It was a target date. So... And then... Okay, so... And when you closed it, the people working there were transferred somewhere else, right? The people that were working there were transferred to other branches. Okay, so it's not farfetched to ask the question why she wouldn't have been transferred to the Addison branch in July, if it was... If you knew you were closing it. Those transfers took place because the branch was closed. But at the time her position was eliminated, there were no open branch manager positions. Well, that's right. At that time, except after you knew that you were going to eliminate the position that you transferred her to two years earlier, the slowest position, a different branch manager position became available. But even knowing that you were going to get rid of her, you didn't put her in that position. Well... You may say you had no obligation to, but... I guess it comes back to the same thing again, which is we can second guess the such as her age. Well, we won't know until those questions are ferreted out in deposition. I mean, the question here is whether she has shown a prima facie case. Well, yes, and then the question is... And these questions might leave us questioning whether or not she actually has. We might think she has. Well, the question, you're right, Your Honor. It's whether she has a prima facie case and also whether the business reason that we gave for the elimination of the position was a pretext. So there are a number of prongs, but I think the trial court got it right when it said that she did not meet the last element of a prima facie case. And especially, I think, in a reduction in force case, a prima facie case is a little bit different. So I've got another question. I just am wondering because it just she gets... She goes on leave and they already know that they're going to get rid of her position. Nobody says anything. And then she says she's coming back October 12th and nobody says anything. And then she gets a basically if she accepts it with no explanation. There's nothing that says we're closing the Goodrich branch. There's no longer position for you. I mean, I don't get it. If that's why you're getting rid of her because you're closing the branch, but you weren't closing the branch and someone took over her duties, why wouldn't that have been in the letter? Well, I think in her deposition testimony, when she received the letter, she testified. She never contacted Oxford to discuss transfers, to discuss anything. Which I thought was remarkable, but she did not. But how would she know to discuss a being asked to leave was because her position was eliminated. They didn't even tell her that. Well, I don't know how she... I can't speak for every single conversation and what she knew after that, but she certainly knew her position was eliminated at some point in time. Thank you, counsel. Thank you. Thank you. Thank you. I think it's very important that the court consider the case of Featherly v. Teledyne Industries 194, MSHAT 352. That case says that an employer must explain why particular employees were selected to stay at the Goodrich branch, younger, lesser qualified, trained by the plaintiff. No explanation as to why she's selected and the plaintiff is not. We also have Jennifer Sherby, given the Addison branch position. No explanation as to why she is selected and the plaintiff... Does an employer have to explain? Featherly says that an employer must? Yes. That case that I cite, it says that the employer has to give an explanation when they are claiming an economic layoff as to why they chose to keep... And that explanation has to come in the form of the letter, the termination or the elimination letter? I don't know how the explanation has to come, but I believe it should at least come in response to our position of establishing a prima facie case. We established a prima facie case. I believe at some point they have to give an explanation as to why they chose particularly younger, lesser qualified individuals over this individual. They had no... Excuse me, counsel. Is the reason... You say the need to offer reasoning. Is that in the context of showing pretext? Exactly, Your Honor. What I'm suggesting here is we establish a prima facie case. We say that all of the elements are there, that she should have... Replaced by a younger person. Right. She's replaced by a younger person. And of course, the argument is, no, she wasn't. Her job was eliminated. Correct. And we cite the case law that suggests that that simply is not the case, that the job wasn't eliminated as relates to Heidi. And we've explored that, right. Right. Additionally, you have the Addison branch, a position that's now open. They know that there's this plan to imminently close Goodrich, and they don't put her in that position. Moreover, counsel argues that, well, you can't challenge our business judgment. That's not exactly what the case law says. Michigan Civil Jury Instruction 105.03 says that the fact finder is permitted to consider the reasonableness of the is tendered for the decision of terminating your eldest, most qualified individual and retaining younger, lesser qualified individuals. The more unreasonable the decision is, the more likely that it is a pretext for discrimination. Lewis case 845 F 2nd 624 6th Circuit. Those are the points that I wanted to make, particularly if there are any questions I'm, I would be happy to answer your main complaint about the fact that, that this Sherbie is her name, Sherb lady was appointed to this in the summer before they told your client that she was going to be laid off. Well, you sure. Which one are you complaining the most about or both? Actually both, your honor. What we're doing, Heidi worked with my client and was trained by my client and is younger than my client. Heidi assumes my client's responsibilities. But then she got transferred out later or did she get fired out? No. Heidi assumes my client's responsibilities at Goodrich and then when Goodrich is eliminated, Heidi is placed in another position at another branch. Once the employer was aware that Goodrich was going to be eliminated, a position arises at the Addison branch. Jennifer Sherbie, less qualified. So our contention is there's a pattern as it relates to giving preferential treatment to younger, less qualified individuals over the plaintiff. Does it matter that Heidi was not promoted into the branch manager position? Not at all, your honor. And that's the the Barnes v. General Corp case. A person is considered replaced if any employee is hired or reassigned to perform the plaintiff's duties. Additionally, I would refer you to Pearson v. Quad Graphics Printing Corp, 749F3530, a Sixth Circuit case. So here it's clear. Heidi is reassigned. The deposition testimony said plaintiff ran the day-to-day duties. Now Heidi runs the day-to-day duties. So I don't believe that it matters that she wasn't hired. I think we have your point. Thank you. I appreciate the court's indulgence. Counsel, as an aside, the court has studied your case and pre-argument we assessed it as bearing risks on both sides. And we took the liberty of inviting our mediation coordinator, Mr. McFaul, to attend argument. He's here today. I never met him. I talked to him on the phone. Okay. Well, there he is. That's our Mr. McFaul. Anyway, if you are interested, Mr. McFaul is available to see if there's any middle ground on this interesting case. Thank you. I appreciate it.